In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2303

Joseph A. Zurawski,

Plaintiff-Appellant,

v.

William A. Halter, Acting Commissioner
of Social Security,/*

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 CV 2819--Arlander Keys, Magistrate Judge.

Argued November 3, 2000--Decided April 6, 2001

Before Flaum, Chief Judge, Easterbrook and Williams,
Circuit Judges.

Williams, Circuit Judge.  Plaintiff Joseph A.
Zurawski applied for Disability Insurance
Benefits and Supplemental Security Income, on the
ground that he had become disabled due to a back
disorder, neck pain, a loss of strength in his
legs, arms and shoulder, and depression, at the
age of thirty-five. The Social Security
Administration initially, and upon
reconsideration, denied his disability claim.
Thereafter, Zurawski requested, and was granted,
a hearing before an Administrative Law Judge
(ALJ). The ALJ determined that Zurawski was not
"disabled" as defined in the Social Security Act.
The Appeals Council denied review, and the ALJ's
decision became the final decision of the
Commissioner of Social Security ("Commissioner").
Zurawski sought judicial review and Magistrate
Judge Arlander Keys granted summary judgment in
favor of the Commissioner. Zurawski now appeals
and, for the reasons set forth below, we reverse
and remand.

I

Zurawski claims that he has been unable to work
since December 3, 1993, when he injured his back
while working as a foreman/laborer at his
brother's construction company. His job/1

required him to lift heavy objects (from 50 to 100 pounds) and to walk, stand, and sit at three hour intervals, with constant bending. Married with four children, Zurawski has a high school education, but no post-secondary education. Since his on-the-job injury, Zurawski has sought treatment for back problems, neck pain, a loss of strength in his legs, arms and shoulder, and depression.

In November 1993, Zurawski saw Dr. Darren A. Deskin, a chiropractor, concerning his back condition. Dr. Deskin noted that Zurawski had a fifteen-year history of chronic lower back pain. He treated Zurawski with intersegmental traction, axial traction, and spinal manipulation. In March 1994, Dr. Deskin recorded some improvement in Zurawski's back condition and opined that Zurawski would be able to return to work. Based on a referral from Dr. Deskin, Dr. Robert Semba examined Zurawski, on March 16, 1994, and found evidence of degenerative disc disease. He prescribed Zurawski anti-inflammatory medication and opined that Zurawski would be able to perform limited duty work with periodic breaks to stretch his back. In April 1994, Zurawski returned to Dr. Deskin, who, upon further examination, concluded that Zurawski was able to resume normal duties. Zurawski did not return to work, however. Five months later, at the behest of his employer's insurance carrier, Zurawski saw Dr. David L. Spencer, who concluded that Zurawski was physically capable of returning to work as a "tile setter"/2 and that there was no evidence to substantiate Zurawski's complaints of pain. Zurawski remained unemployed. The following year, beginning in June 1995, Zurawski began treatment with Dr. Marwaha/3 who then referred him to Dr. Vikram Gandhi for his back condition. Dr. Gandhi prescribed anti-inflammatory medications and physical therapy treatments for Zurawski.

In July 1995, Zurawski began physical therapy treatments for his back condition at Silver Cross Hospital. From July to November 1995, he regularly attended physical therapy sessions, three times a week, with some recorded improvements in his back condition. Around the same time, the Mental Health Division of Will County, Illinois diagnosed him as having an adjustment disorder with depressed mood and determined his Global Assessment of Functioning (GAF) to be seventy, indicating mild symptoms. Dr. Lozano, a psychiatrist, subsequently confirmed this diagnosis. In October 1995, a magnetic resonance imaging (MRI) of Zurawski's lumbar and cervical spine indicated that he had a bulging disc and degenerative disc disease. As a result, Dr. Gandhi recommended that Zurawski continue physical therapy, attend a pain clinic

and a work rehabilitation program, and undergo a surgical assessment. In November 1995, a physical therapist reported that Zurawski could not tolerate sitting and standing for more than twenty minutes. Dr. Gandhi then referred Zurawski to Dr. Ramsis Ghaly, a neurosurgeon. Based on the MRI and Zurawski's complaints of pain in his lower back, neck, and legs, Dr. Ghaly recommended physical therapy and epidural steroid injections.

At the request of the Social Security Administration (SSA), Dr. Francis Vincent performed a residual functional capacity assessment on November 25, 1995. Dr. Vincent found that Zurawski had the capacity to lift and/or carry from ten to twenty pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for six hours with unlimited ability to push and/or pull. Two days later, again at the request of the SSA, Dr. Kirk Boyenga completed a Psychiatric Review Technique form. Dr. Boyenga found that Zurawski suffered from a non-severe affective disorder and a slight restriction in his ability to perform activities of daily living.

In January 1996, Zurawski entered a pain clinic program stating that he suffered from pain in his lower back, neck, and legs. At that time, Zurawski was on a number of pain medications and had difficulty sleeping, eating, and socializing with others. He also had another MRI taken of his cervical spine, which revealed slight cervical straightening, with some apparent degenerative bony change at the C5-6 vertebra. Over the next several months, Zurawski received three epidural injections in an effort to alleviate his back pain. Yet, the pain persisted.

In February 1996, Dr. Ghaly noted, "putting all the x-rays together, there is no good explanation for [Zurawski's] subjective pain." As a consequence, he released Zurawski to perform light work. However, Zurawski did not return to work. Two months later, Zurawski had inpatient back treatment in combination with an aggressive course of physical therapy at an area hospital. Zurawski reported that his back condition was aggravated by bending and twisting of his lower back and prolonged sitting and standing. He also had diminished strength in his lower extremity and was prescribed pain and sleeping medications. On May 15, 1996, Zurawski was discharged from the physical therapy program.

The following month, Zurawski participated in a functional capacity assessment completed by ERGOS Work Recovery, Inc., at Dr. Ghaly's request, in order to determine his capacity to work. ERGOS

found that Zurawski showed the potential for performing in the Medium/Heavy physical demand, in part, because he lifted a fifty pound box to shelf height and a seventy pound box to bench height. Although Zurawski registered various complaints of pain during the evaluation,/4 ERGOS reported that Zurawski showed no difficulties sitting, standing, walking, or climbing. On October 9, 1996, Zurawski began treatment with Dr. Ronald J. Lotesto, a psychiatrist, for his pain symptoms. Dr. Lotesto characterized Zurawski's pain as "chronic" and "severe" resulting in his inability to function. He stated that Zurawski had disc herniations and prescribed various medications for pain and depression.

In November 1996, Dr. Ghaly advised Zurawski to return to work and to continue treatment with a psychiatrist. He also prescribed medications for Zurawski's pain and depression symptoms.

At the administrative hearing held before the ALJ, Zurawski, then 39-years-old, was the only witness to testify. He testified that Dr. Lotesto was treating him for pain, not depression, and that he considered Dr. Lotesto to be his treating physician. He reported that his daily activities included helping his four children prepare for school and driving two younger children to and from school, less than a mile each way. He stated that he washes dishes, does some laundry, prepares dinner, and helps his children with their homework. He indicated that he had difficulty finding work because of his back condition. He explained that he cannot sit, walk, stand, lift, carry, or bend on a prolonged basis due to pain. He testified that, at most, he can work from two to three hours a day while using Tegretol, which helps to alleviate his pain symptoms. However, he reported experiencing memory loss and concentration deficits from using Tegretol. And, while he once used his garage as a shop to maintain trucks and stain cabinets, Zurawski denied working in the shop since his injury on December 3, 1993.

In deciding whether Zurawski had met his burden of establishing disability, the ALJ applied the standard five-step inquiry, see 20 C.F.R. sec. 404.1520, which required her to evaluate, in sequence:

(1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], see 20 C.F.R. sec. 404, Subpt. P, App. 1; (4) whether the claimant can perform [his] past relevant work; and (5)

whether the claimant is capable of performing work in the national economy.

Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000) (quoting Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995)). Under the five-part sequential evaluation process, "[a]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985) (citation omitted). If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy. Id.

In concluding that Zurawski was not "disabled" as defined in the Social Security Act, the ALJ reserved ruling on whether Zurawski had engaged in substantial gainful activity since December 3, 1993, the alleged onset date of his disability. She found that Zurawski had a "severe" combination of impairments, namely, a disorder of the back and depression, but did not have an impairment, or combination of impairments, which met or equaled in severity the requirement of any of the impairments listed in 20 C.F.R. sec. 404, Subpart P, Appendix 1 ("Listing"). Further, she found that Zurawski was unable to perform his past relevant work as a laborer, mechanic, and carpenter. Next, she found that Zurawski's residual functional capacity/5 allowed him to perform the physical exertion requirements of light work, except for lifting or carrying more than twenty pounds./6 In making these determinations, the ALJ found "not entirely credible" Zurawski's complaints of disabling pain. The ALJ further found that Zurawski had no nonexertional limitations./7 She did note, however, that Zurawski had "slight" limitations on his activities of daily living and ability to maintain social functioning, with "seldom" deficiencies in concentration, persistence, or pace, and no decompensation.

Based on Zurawski's residual functional capacity, his age, education, and work experience, and using the Medical-Vocational Guidelines as a framework for decision-making, the ALJ concluded that, since Zurawski was capable of making an adjustment to other work, he was not "disabled" within the meaning of the Social Security Act. After the Appeals Council denied review, Zurawski filed a complaint seeking judicial review in the district court. Presented with cross-motions for summary judgment, Magistrate Judge Keys ruled in favor of the Commissioner, finding that substantial evidence

in the record supported the ALJ's decision denying Zurawski disability benefits.

On appeal, Zurawski argues that (1) the ALJ's credibility determinations were "patently wrong;" (2) the ALJ erred in concluding that he had the residual functional capacity to perform light work; (3) the ALJ failed to properly weigh the opinion of his treating physician, Dr. Lotesto; and (4) the ALJ erred in relying on the Medical-Vocational Guidelines without consulting a vocational expert in determining his ability to perform work in the national economy.

II

We will affirm the ALJ's decision if it is supported by substantial evidence. Clifford, 227 F.3d at 869. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where, as here, the ALJ denies benefits, our cases make it clear that the ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion."/8 Clifford, 227 F.3d at 872.

A. Zurawski's Credibility

Zurawski contends that the ALJ's credibility determinations were erroneous. The ALJ's credibility determinations generally will not be overturned unless they were "patently wrong." Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Here, the ALJ found Zurawski's complaints of disabling pain "not entirely credible due to the inconsistencies with the objective medical evidence, and inconsistencies with daily activities." Unfortunately, we are left to ponder what exactly are these "inconsistencies" because the ALJ provided no further explanation. Under Social Security Ruling 96-7p, the ALJ's determination or decision regarding claimant credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." In this regard it is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." Id. It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.

While the ALJ did list Zurawski's daily

activities, those activities are fairly restricted (e.g., washing dishes, helping his children prepare for school, doing laundry, and preparing dinner) and not of a sort that necessarily undermines or contradicts a claim of disabling pain. See Clifford, 227 F.3d at 872 (noting "minimal daily activities . . . do not establish that a person is capable of engaging in substantial physical activity"). The ALJ should have explained the "inconsistencies" between Zurawski's activities of daily living (that were punctured with rest), his complaints of pain, and the medical evidence. Id. at 870-72.

With respect to there being "inconsistencies" with the medical evidence, we have instructed that:

If the allegation of pain is not supported by the objective medical evidence in the file and the claimant indicates that pain is a significant factor of his or her alleged inability to work, then the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for the relief of pain, functional restrictions, and the claimant's daily activities.

Luna v. Shalala, 22 F.3d 687, 691 (7th Cir. 1994) (citation omitted). But, where the medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations. Id.

To support her decision denying benefits, the ALJ relies on evidence that seemingly contradicts Zurawski's complaints of disabling pain. For instance, she mentions the findings of four physicians (namely, Dr. Semba, Dr. Spencer, Dr. Deskin, and Dr. Ghaly), all of whom concluded that Zurawski was capable of returning to work. But the medical record also includes MRI results showing that Zurawski had a bulging disc and degenerative disc disease, which only Dr. Ghaly apparently considered. In addition, Zurawski had several epidural injections (per Dr. Ghaly's recommendation) and was prescribed a number of prescription medications to alleviate pain and depression symptoms, including Tegretol, Serzone, Ultram, and Valium./9 "Both the evidence favoring the claimant as well as the evidence

favoring the claim's rejection must be examined, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight." Bauzo v. Bowen, 803 F.2d 917, 923 (7th Cir. 1986) (citations omitted) (emphasis added). Here, we are unable to tell whether the ALJ investigated "all avenues" that relate to Zurawski's complaints of pain because her decision offers no clue as to whether she examined the full range of medical evidence as it relates to his claim.

Because the ALJ's decision, in its present form, falls below the mark, we lack a sufficient basis to sustain the ALJ's credibility determination. We are not suggesting that the ALJ's credibility determination was incorrect, but only that greater elaboration is necessary. Accordingly, the ALJ must conduct a reevaluation of Zurawski's complaints of pain with due regard for the full range of medical evidence.

B.  Residual Functional Capacity

Once the ALJ determined that Zurawski was unable to perform his past relevant work, she sought to establish (as the law requires her to do) that Zurawski had the capability of performing other work in the national economy. See Clifford, 227 F.3d at 873. She found that Zurawski retained the residual functional capacity to engage in light work, except for lifting or carrying more than twenty pounds. In making the residual functional capacity determination, Zurawski contends that the ALJ ignored medical evidence favorable to him. Specifically, Zurawski claims that the ALJ failed to consider "significant" medical evidence supporting his back pain and depression, including, his intensive physical therapy treatments, his heavy prescription medications, his epidural injections, his MRI results showing a bulging disc and degenerative disc disease, and his treating physician's (Dr. Lotesto's) records and opinions.

It is worth repeating that "an ALJ may not ignore an entire line of evidence that is contrary to her findings," Henderson v. Apfel, 179 F.3d 507, 514 (7th Cir. 1999), rather she must "articulate at some minimal level [her] analysis of the evidence" to permit an informed review. Clifford, 227 F.3d at 872. Here (as noted above), the ALJ mentions only the medical evidence favoring the denial of benefits. And from her analysis, we are unable to discern whether she considered the record as a whole. Indeed, she made no mention of Zurawski's MRI results, and several of the medical findings that she relied on concerning Zurawski's capacity to

work, including that of Dr. Semba, Dr. Spencer, and Dr. Deskin, were rendered before the MRI was ever taken. Although the ALJ also supported her decision with findings by ERGOS and Dr. Ghaly, she made no attempt to explain why the other evidence in the record, which appears to favor Zurawski (e.g., the MRI results), was overcome by the evidence on which she relied. For instance, the ALJ mentioned only Dr. Ghaly's November 14, 1996 report, which does not address (or, for that matter, rebut in a substantial way) the objective medical evidence favoring Zurawski's claim. While we have never required an ALJ to address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits. In this case, the ALJ's decision simply fails to permit an informed review, and therefore, a remand for a redetermination of Zurawski's residual functional capacity is necessary.

C. Treating Physician

   Zurawski also argues that the ALJ erred by failing to give any weight to the opinion of his treating physician, Dr. Lotesto. Although Dr. Lotesto's speciality is psychiatry, Zurawski maintains that Dr. Lotesto had treated him for pain symptoms. During the course of treating Zurawski, Dr. Lotesto opined that Zurawski's pain was "severe," resulting in his inability to function. Dr. Losteto also concluded that Zurawski suffers from disc herniation. However, the objective medical evidence shows that Zurawski had a bulging disc, not a herniation. While "a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with other substantial evidence in the record," Clifford, 227 F.3d at 870, the ALJ does not address Dr. Lotesto's findings one way or another. In light of the numerous deficiencies in the ALJ's decision, we believe that the ALJ should examine what weight, if any, to give to Dr. Lotesto's findings on remand.

D. Vocational Expert

   In determining at step 5 of the sequential inquiry that Zurawski has the capacity of making an adjustment to work, the ALJ relied on the Medical-Vocational Guidelines (the "grids") as a framework for decision-making. Based on Zurawski's functional capacity, age, and experience, the grids directed a finding of "not disabled." Zurawski contends that the ALJ erred in relying on the grids to find him not disabled because he has a nonexertional limitation, namely, pain. He argues that the ALJ should have

consulted a vocational expert in an effort to determine whether there are a significant number of jobs in the national economy that he can do given his physical and mental impairments.

We have clearly stated that where a nonexertional limitation might substantially reduce a range of work an individual can perform, the use of the grids would be inappropriate and the ALJ must consult a vocational expert. Luna, 22 F.3d at 691. Here, as discussed earlier, the ALJ improperly discredited Zurawski's complaints of disabling pain and ignored evidence that might impact Zurawski's ability to work. Zurawski testified that he suffers from debilitating pain that restricts his ability to sit, walk, stand, lift, carry, or bend on a prolonged basis and there is some evidence that appears to bolster this claim. Because we have ordered a redetermination of Zurawski's residual functional capacity and a reevaluation of his testimony, it would be premature to direct the ALJ to solicit vocational testimony from an expert. That said, however, the ALJ must act consistent with the law in this circuit (and the standards set forth in this opinion) if she relies on the grids on remand, see, e.g., Luna, 22 F.2d at 691-92.

III

For the foregoing reasons, the judgment of the district court, upholding the Commissioner's decision to deny benefits to Zurawski, is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

/* William A. Halter, the acting Commissioner of Social Security, is substituted as defendant for Kenneth S. Apfel, the former Commissioner of Social Security. Fed. R. App. P. 43(c)(2).

/1 Zurawski's work involved removal and installation of flooring and operation of floor grinders, concrete mixers, and bobcats. He also performed some office work.

/2 The record indicates that Zurawski also engaged in carpentry work.

/3 The court was unable to locate Dr. Marwaha's first name in the record.

/4 ERGOS recorded that Zurawski experienced muscle spasms and tightness and shooting pain to the lower extremities. Zurawski also walked with a slight limp.

/5 "Residual functional capacity" is how much an adult can do despite his impairment. Hickman v. Apfel, 187 F.3d 683, 689 (7th Cir. 1999).

/6 "Light work" involves (1) lifting or carrying ten pounds frequently; (2) lifting twenty pounds occasionally; (3) standing or walking, off and on, for six hours during an eight-hour workday; (4) intermittent sitting; and (5) using hands and arms for grasping, holding, and turning objects. 20 C.F.R. sec. 404.1567(b); Social Security Ruling 83-10.

/7 "Nonexertional limitations" affect a person's ability to meet the non-strength demands of a job. 20 C.F.R. sec. 404.1569a(c)(1). Such limitations might include difficulties in functioning because of depression, concentration deficits, or manipulative or postural defects. See id.

/8 In this regard, we owe no deference to the lower court's review of the ALJ's decision.

/9 At the time of the hearing, Zurawski was also taking Amitriptyline (for sleeping) and Zantac (for his stomach ulcers and unstable stomach).