Gloria BAILEY, Plaintiff–Appellant,

v.

Jo Anne B. BARNHART,
Defendant–Appellee.

No. 01–3474.

United States Court of Appeals,
Seventh Circuit.

Argued April 25, 2002.

Decided June 26, 2002.

Before CUDAHY, RIPPLE, ROVNER, Circuit Judges.

### ORDER

Gloria Bailey appeals the denial of her application for Social Security Disability Income benefits. She argues that the decision to deny benefits was not supported by substantial evidence. We agree with Bailey that the ALJ did not adequately address opinions by a treating physician, Dr. Judith Lee–Sigler, and a chiropractor, Dr. Stephen Hutti, and therefore vacate and remand for further proceedings.

### BACKGROUND

Ms. Bailey is a 39–year–old high school graduate who held a variety of secretarial and clerical jobs from 1983 until October 1994, when she left her job as a billing clerk for a trucking company to give birth to her daughter. A few weeks after her child was born, Ms. Bailey developed partial immobility in her right leg and pain in her lower back. She has not worked at all since that date.

Ms. Bailey first sought treatment for her pain in March 1995 from Dr. James Niemeyer at the Carle Clinic in Urbana, Illinois. After a physical examination, x-rays, bloodwork, and an MRI, Dr. Niemeyer diagnosed Ms. Bailey with fibromyalgia, neck pain, dysfunction of the cervical spine, possible carpal tunnel syndrome, and sleep disturbance. He recommended physical therapy, exercise, and an antidepressant to help Ms. Bailey sleep.

Over the following years, Ms. Bailey regularly visited the Carle Clinic, where several doctors, including Dr. Niemeyer, examined and treated her. Among these doctors was Dr. Smucker, who reported in 1996 that Ms. Bailey had received "excellent pain relief" and was "improving nicely" in response to injections of lidocaine. Also among the doctors Ms. Bailey saw at the clinic was Dr. Lee–Sigler, whom Ms. Bailey began visiting in 1996. Dr. Lee–Sigler diagnosed Ms. Bailey with fibromyalgia, radiculitis, and arthritis of the lumbar spine. Among other things, Dr. Lee–Sigler treated Ms. Bailey's pain with trigger-point injections of lidocaine and physical therapy.

Ms. Bailey applied for disability benefits in March 1997, but her application was denied that May. She continued treatment at the Carle Clinic, and in the summer of 1997 a clinic psychologist, Dr. Donald McGrogan, documented his belief that she was probably depressed. She also continued to see Dr. Niemeyer, who in June 1997 wrote in his treatment notes that Ms. Bailey had complained to him that her pain

was aggravated by "everything" and that she was unable to work, a position that, as he also wrote in his notes, Dr. Niemeyer had "no way of negating or refuting." Two weeks later he wrote in his notes, "I think she is disabled because of her pain." Judy Freeman, an occupational therapist, also evaluated Ms. Bailey that summer and reported that the range of motion in her arms was normal, but that her muscle strength in her arms tested at three to four on a five point scale. Ms. Freeman also reported that Ms. Bailey could lift and carry ten pounds and that she tested positive for symptom magnification.

In September 1997 Ms. Bailey requested reconsideration and a hearing on the denial of her application for disability benefits. The hearing was scheduled for November 1998.

While her hearing was pending, Ms. Bailey continued to seek treatment at the Carle Clinic. In October 1997, she saw Dr. Terry Noonan, who wrote in his notes that Ms. Bailey reported that her symptoms had been improving with physical therapy. Ms. Bailey also continued treatment with Dr. Lee–Sigler, who in May 1998 diagnosed a herniated disc and radiculitis based on an MRI and electromyography. At that time the doctor recommended that Ms. Bailey change positions every 20 to 30 minutes. In October 1998 Dr. Lee–Sigler reported that a bone scan, hip x-ray, and lumbar exam were within normal limits except for minimal degeneration in the right hip. Dr. Lee–Sigler concluded that Ms. Bailey's primary diagnosis was fibromyalgia. In an addendum to those notes, the doctor opined that it was necessary for Ms. Bailey to alternate frequently between sitting and standing, lie down for 30 to 60 minutes as needed, drive no more than ten to 15 minutes at a time, and lift no more than five pounds.

An ALJ held a hearing on Ms. Bailey's case in November 1998, and in an April 1999 opinion concluded that she was not disabled. The ALJ evaluated Ms. Bailey's case using the standard five-part analysis, first concluding that Ms. Bailey had not engaged in substantial gainful activity since the onset of her condition and that she had a severe medical condition.

But the ALJ also found that Ms. Bailey's condition was not so severe as to render her disabled and that she retained the residual functional capacity to work. In reaching this conclusion, the ALJ found that Ms. Bailey was not a credible witness regarding the intensity and chronic nature of her symptoms. The ALJ cited, for example, Ms. Bailey's hearing testimony that her condition did not improve with treatment and the conflicting medical records documenting her contemporaneous reports to treating physicians that she was experiencing some relief from measures such as physical therapy, analgesics, chiropractic treatment, and lidocaine injections. The ALJ also observed that Ms. Bailey reported to doctors that her pain was worsening and that treatment was ineffective primarily after requesting a hearing on her disability status. The ALJ also found Ms. Bailey's complaints to be less credible because her exit from the workforce coincided with the birth of her child (as did the onset of her symptoms), from which the ALJ inferred that Ms. Bailey left the workforce primarily due to childcare concerns rather than health concerns. Moreover, the ALJ reasoned that Ms. Bailey's testimony that she was unable to perform most household and childcare tasks contradicted her statements in medical reports that she is responsible for "a good share of" housework and childcare, although the ALJ did not address the nature of Ms. Bailey's responsibilities. Because the ALJ found Ms. Bailey's own testimony about the severity of her condition to be suspect,

the ALJ relied heavily on the medical record.

Turning to the medical evidence, the ALJ then found that the record supported a finding that Ms. Bailey had the capacity to perform light or sedentary work. The ALJ concluded that Ms. Bailey's examinations revealed no muscular weakness and that Ms. Bailey's ability to care for a child showed that she could lift 10 to 20 pounds, as required in light work. The ALJ also found that Ms. Bailey could sit or stand for six hours per day, as required by light or sedentary work, but that her need to change positions frequently would limit her to work that would allow her to change positions every 20 to 30 minutes. Because Ms. Bailey had complained of pain while driving a car, the ALJ found that she could not work at jobs requiring use of right leg or foot controls and that she should be restricted from climbing to great heights.

In reaching these conclusions, the ALJ considered but rejected as unsupported an October 1998 treatment note by Dr. Lee–Sigler. This note recorded Ms. Bailey's report to Dr. Lee–Sigler that her condition was worsening and the doctor's response that she had "nothing further to offer her other than medical management." In an addendum to that note, the doctor also recommended that Ms. Bailey alternate between sitting and standing every 15 to 20 minutes, recline for 30 to 60 minutes as needed, drive no more than 10 to 15 minutes at a time, and lift, pull, or push no more than five pounds. Although the ALJ acknowledged that treating physicians' opinions ordinarily receive great weight, she found that Dr. Lee–Sigler's note was "sympathetic rather than objective" and that it was inconsistent with the weight of the medical evidence, Dr. Lee–Sigler's own prior reports, and Ms. Bailey's reports of being able to engage in some child care.

The ALJ then turned to the testimony of a vocational expert. The expert reported that, given the restrictions imposed by the ALJ, Ms. Bailey could perform her past relevant work as a clerk or teller. The expert also testified that a variety of other unskilled jobs met the ALJ's restrictions, such as airline security representative, surveillance system monitor, laundry worker, or arcade attendant, jobs which exist in substantial numbers in the state economy. Ms. Bailey's counsel then asked the expert whether these jobs would allow Ms. Bailey to lie down for 30 to 60 minutes as needed, per Dr. Lee–Sigler's instructions. The expert responded that she had constructed her list assuming that the employee would not need to leave her position to take breaks other than lunches and other designated breaks and thus was unable to say how many jobs would permit Ms. Bailey to lie down as needed. The ALJ, using the expert's list of light and sedentary jobs with a sit/stand option found that Ms. Bailey could perform her past relevant work as a clerk or teller and could perform other jobs that existed in substantial numbers in the state economy. The ALJ thus found that Ms. Bailey was not disabled.

Ms. Bailey then submitted a request for review to the Appeals Council. When the Council denied her request, Ms. Bailey filed a complaint in the district court. Both parties moved for summary judgment. The district court granted the defendant's motion, finding that the ALJ's decision was supported by substantial evidence.

## DISCUSSION

Disability benefit determinations are evaluated using a five-step analysis. 20 C.F.R. § 404.1520. Here, the ALJ was satisfied that Ms. Bailey had not engaged in gainful employment since October 1994

(step 1), that the medical evidence established a severe impairment (step 2), and that the impairment did not meet or equal any listed in the regulations (step 3). Ms. Bailey does not dispute these conclusions, but argues that the ALJ incorrectly determined that she retained the residual functional capacity to resume her past work (step 4) and that she could also perform other substantial gainful activity in the national economy (step 5).

The ALJ's decision that Ms. Bailey is not disabled must be supported by substantial evidence, i.e., sufficient evidence for a reasonable person to accept that the evidence supports the conclusion. *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir.2000). The reviewing court examines the entire record, but does not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Id.* An ALJ must explain the rationale for the opinion sufficiently for a reviewing court to follow the ALJ's reasoning, but need not address every piece of testimony or evidence. *Diaz v. Chater,* 55 F.3d 300, 307–08 (7th Cir.1995).

Ms. Bailey argues that the ALJ failed to address evidence supporting her claim, including doctors' opinions of her ability to work and evidence that she was depressed. She also argues that the ALJ wrongly discredited her own testimony about her condition.

### 1. Opinion of Dr. Lee–Sigler

 Ms. Bailey argues convincingly that the ALJ did not adequately support her rejection of treating physician Dr. Lee–Sigler's October 1998 treatment notes, which stated that Ms. Bailey could not lift more than five pounds, needed to change positions every 15 to 20 minutes, and needed to recline for 30 to 60 minutes at a time. A treating physician's opinion

regarding the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical evidence and not inconsistent with other substantial evidence in the record. *See Clifford,* 227 F.3d at 870; 20 C.F.R. § 404.1527(d)(2). But a treating physician's opinion must also be evaluated in light of bias that may exist due to the doctor's sympathy for the patient. *See Dixon v. Massanari,* 270 F.3d 1171, 1177 (7th Cir.2001). The ALJ's credibility determination is reversible only where it is "patently wrong," but the ALJ must explain the rationale for credibility determinations. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir.2001) (quotation omitted). Here, the ALJ did not adequately explain why she discredited Dr. Lee–Sigler's opinion as "clearly more sympathetic than objective." The ALJ stated only that the doctor's note was "inconsistent not only with Dr. Lee–Sigler's own progress notes but also with the remainder of the medical evidence and the claimant's well-established activity of caring for her child."

The ALJ did not explain why she believed the restrictions recommended in Dr. Lee–Sigler's October 1998 treatment note were inconsistent with her prior notes. An ALJ need not give controlling weight to a treating physician's opinion where that physician's opinion is contradicted by other substantial evidence. *See Clifford,* 227 F.3d at 870. But the ALJ did not explain which progress notes are inconsistent with the October 1998 report, nor are any contradictions obvious from the record. We are therefore left without an adequate basis for sustaining the ALJ's determination.

Similarly, the ALJ asserted that the weight of the medical evidence contradicts Dr. Lee–Sigler's October 1998 note. The ALJ cited several earlier treatment notes by other doctors reporting that Ms. Bailey

was responding to conservative treatment, yet none of these examples specifically address Ms. Bailey's tolerance for sitting, standing, or lifting. We are therefore once again unable to discern the rationale for the ALJ's statement.

The ALJ further concluded that Ms. Bailey's participation in housework and childcare contradicted Dr. Lee–Sigler's October 1998 treatment notes. The ALJ asserted that Ms. Bailey's consistent reports that she participates in housework and cares for her daughter contradicted Dr. Lee–Sigler's report, but she did not explain how. Involvement in household activities does not necessarily contradict a claim of disabling pain. *See Zurawski*, 245 F.3d at 887. Although Ms. Bailey stated that she participated in childcare and housework, she also denied being able to lift her daughter, told doctors that running a sweeper exhausted her, and told doctors that her parents and husband aided her significantly with childcare. Her involvement in these activities thus does not undermine Dr. Lee–Sigler's opinion as to medically necessary restrictions on sitting and lifting.

Ms. Bailey also argues that the ALJ was required to contact Dr. Lee–Sigler for clarification of her treatment notes before finding her October 1998 notes to be more "sympathetic than objective in nature." Ms. Bailey cites an agency regulation providing that "[w]hen the evidence we receive from your treating physician ... is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination ... we will first recontact your treating physician." 20 C.F.R. 404.1512(e). She also cites two policy interpretation rulings by the Social Security Administration that require an ALJ to recontact a treating source where a gap in the record makes the basis for that source's opinion unclear. *See* SSR 96–2p; SSR 96–5p. But no such gap in the record exists here. Ms. Bailey's argument that the ALJ was required to recontact Dr. Lee–Sigler therefore fails.

Nonetheless, the ALJ did not sufficiently explain her reasoning for rejecting Dr. Lee–Sigler's October 1998 treatment notes. Nothing in the record directly contradicts the restrictions in those notes and it is not apparent why the ALJ believes contradictions exist. We therefore lack a sufficient basis to sustain the ALJ's credibility determination with respect to Dr. Lee–Sigler's October 1998 treatment notes.

**2. Opinion of Dr. Stephen Hutti**

■ Ms. Bailey also argues convincingly that the ALJ improperly failed to consider the opinion of a chiropractor, Dr. Stephen Hutti. Dr. Hutti wrote in July 1997 that Ms. Bailey "would have a 2–3 hour tolerance for work and then her pain would increase significantly." Dr. Hutti did not provide an explanation for this opinion, nor does any other reference to Dr. Hutti appear in the record. An ALJ need not account for every piece of evidence in the record, *Diaz*, 55 F.3d at 308, but Dr. Hutti's opinion addresses Ms. Bailey's tolerance for work, an issue crucial to this case. Because Dr. Hutti's evaluation contradicted the ALJ's decision that Ms. Bailey could work six or more hours per day—which is at the heart of this case—the ALJ should have addressed it.

**3. Ms. Bailey's Depression**

■ Ms. Bailey also argues that the ALJ failed to address a line of evidence showing that depression contributed to her inability to work. Although an ALJ need not address every piece of evidence, *Diaz*, 55 F.3d at 308, the ALJ must not ignore an entire line of evidence that is contrary to the ruling, *Zurawski*, 245 F.3d at 888. The evidence regarding Ms. Bailey's depression is sparse. In August 1997 Dr. Donald McGrogan, a psychologist, admin-

istered a personality test to Ms. Bailey and opined that "it is probably safe to say that she is experiencing at least a mild to moderate amount of depressive reaction." The next month, however, Ms. Bailey denied to another doctor "any nervousness, anxiety, tension, lability of mood, depression or personality changes." At her hearing before the ALJ, Ms. Bailey's discussion of her mental state was ambiguous. The ALJ asked her, "Do you have any mental problems? See a psychologist? Psychiatrist? Counselor?" Ms. Bailey responded, "No. The only thing they've got me on the anti-depressant because they said I'm suffering from depression from all the pain." Thus, although she denied mental problems, she also reported that doctors had told her she was suffering from depression.

Although the ALJ did not discuss Ms. Bailey's statement at the hearing that she had been told she was suffering from depression or Dr. McGrogan's tentative diagnosis of depression, the ALJ did address Ms. Bailey's use of antidepressants. For example, the ALJ reported that doctors prescribed Ms. Bailey low-dose antidepressants for a sleep disorder and that later treatment notes commented that she was responding well to them. Thus, although the ALJ did not discuss depression *per se*, she did address the impact of antidepressants on Ms. Bailey's condition. Because the ALJ discussed Ms. Bailey's use of antidepressants and because the possibility of depression was mentioned by a doctor on only one occasion, the ALJ adequately addressed this issue.

### 4. Opinion of Dr. Niemeyer

■ Ms. Bailey also contends that the ALJ erred by not discussing Dr. Niemeyer's comment in his July 2, 1997, treatment notes that he thought she was "disabled by her pain." The doctor made his note when, several months after she filed her disability claim, Ms. Bailey reported to

him that she was unable to work. But "a claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir.2001). Although the ALJ did not discuss Dr. Niemeyer's opinion that Ms. Bailey is disabled, she did take Dr. Niemeyer's treatment notes into account when making her decision. For example, she cited Dr. Niemeyer's diagnosis of fibromyalgia and described treatments prescribed by him. That the ALJ did not discuss Dr. Niemeyer's opinion on disability does not suggest that the ALJ paid no attention whatsoever to Dr. Niemeyer's medical opinions. Moreover, the ALJ commented that Dr. Niemeyer's notes from June 1997 show that Ms. Bailey had complained to him that his notes did not adequately reflect the impact of her symptoms on her daily life. The ALJ viewed these comments with suspicion because they occurred after Ms. Bailey's application for disability benefits was denied. Thus, although the ALJ did not address one particular comment by Dr. Niemeyer that Ms. Bailey was disabled, she did not ignore his treatment of or opinions regarding Ms. Bailey's condition.

### 5. Ms. Bailey's Credibility

■ Ms. Bailey also argues that the ALJ erred in discounting her own testimony regarding the intensity and chronic nature of her symptoms. When considering a claimant's testimony regarding pain, the ALJ must set out reasons for the weight given to that testimony. *Zurawski*, 245 F.3d at 887.

Here, the ALJ explained at length her reasoning for finding Ms. Bailey not credible regarding her symptoms. For example, the ALJ commented that doctors had on numerous occasions reported that Ms. Bailey was benefitting from conservative treatment and that Ms. Bailey's complaints about pain and ineffective treatment inten-

sified only after she had filed for disability benefits. Furthermore, the ALJ found that Ms. Bailey's description of her day-to-day activities were inconsistent with her testimony that her pain was severe and constant. The ALJ thus adequately supported her reasons for finding Ms. Bailey's testimony to be not credible.

## CONCLUSION

The ALJ did not adequately explain her rationale for discounting the recommendations of one of Ms. Bailey's treating physicians, Dr. Lee–Sigler, and did not address a chiropractor's opinion contradicting the ALJ's opinion that Ms. Bailey was able to work. We therefore VACATE and REMAND for further proceedings consistent with this order.