**Allen AUSTIN, Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.**

No. 03–1764.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 30, 2003.

Decided Nov. 21, 2003.

Antony S. Burt, Erin M. McGinley, Schiff, Hardin & Waite, Henry Rose, Chicago, IL, for Plaintiff–Appellant.

Kathryn Beverly, Office of the General Counsel, Chicago, IL, for Defendant–Appellee.

Before BAUER, POSNER, and DIANE P. WOOD, Circuit Judges.

### ORDER

■ Allen Austin, a 30–year CTA employee, applied for Disability Insurance Benefits in February 1999 for the closed period of June 1994 to May 1996. His claim was denied initially, after reconsideration, and then after a hearing before an ALJ. The ALJ reached step five of the familiar analysis but concluded that Austin was not disabled because he had the functional capacity to perform the full range of sedentary work and that, according to the Medical Vocational Guidelines (the Grid), sufficient jobs existed in the national economy for someone with Austin's functional capacity.

Austin essentially takes issue with the ALJ's assessment that he has the functional capacity to perform the full range of sedentary work. He claims that his abilities are limited by his problems stooping and manipulating objects–so–called "nonexertional limitations." Austin identifies at least two distinct ways in which the ALJ erred when assessing his functional capacity. He argues (1) that the ALJ improperly discredited the opinion of one of his nontreating physicians, Dr. Kasriel Tausk, who said that Austin should never stoop, and (2) that the ALJ improperly discredited his testimony of subjective complaints without making an adequate credibility determination. Because there is substantial evidence to support the ALJ's assessment of Austin's functional capacity and ultimate determination of disability, we affirm.

Austin has complained of back problems since June 1994, when he fell at work. He initially saw his primary care physician, Dr. Emily Chacko, and after several visits, she referred Austin to a neurosurgeon. Austin saw Dr. Chacko and two neurosurgeons, Dr. Robert Gettleman and Dr. Lawrence Ferguson, several times over the next two years about his back trouble. He also saw Dr. Kasriel Tausk, who examined him once at the request of the Bureau of Disability Determination Services. The ALJ summarized Austin's ultimate diagnoses as cervical joint spurring, stenosis,[1] and spondylosis;[2] lumbar stenosis; and degenerative changes in the lumbosacral spine.

Austin's three treating physicians gave somewhat conflicting reports regarding Austin's functional capacities. Drs. Gettle-

1. Narrowing of the spinal canal. *Stedman's Medical Dictionary* 698–701 (27th ed.2000). Cervical stenosis is a narrowing in the neck area. *Id.* at 1695.

2. A stiffening or fixation of the vertebra. *Id.* at 1678.

man and Chacko's reports are consistent with each other, and they both support the ALJ's conclusions that Austin can stoop and use his hands enough to perform sedentary work. The only limitation Dr. Chacko ever suggested was that Austin not do heavy lifting or heavy pushing and pulling. Dr. Gettleman reported in 1996 that there was "still no radicular component" to Austin's back and neck pain. That report was made outside of the claim period, but the comment suggests that no radicular component appeared in earlier visits during the claim period. Dr. Ferguson's report, on the other hand, suggests that Austin's abilities to stoop and grasp are limited. In December 1994 Dr. Ferguson reported that Austin's hand grasp was "not as good," and he cited as evidence that Austin had dropped an axe on his foot because his hands had reportedly gone numb. A year later he reported that Austin had decreased range of motion in his cervical and lumbosacral spine.

Two doctors who evaluated Austin's functional capacity at the request of the Social Security Administration gave conflicting reports of his stooping abilities, but neither thought he had any limitations on his abilities to reach or grasp. Dr. Tausk examined Austin in November 1994 and wrote a report a year after the examination that provides Austin the most fuel for his argument on appeal. Immediately after examining Austin, Dr. Tausk reported that he had decreased range of motion in his neck and cervical spine but a full range of motion in his extremities. A year later he filled out a form evaluating Austin's functional capacity, apparently based on his single, year-old examination, and reported that Austin could never stoop and should avoid pushing and pulling. Dr. Victoria Dow also evaluated Austin's functional abilities, but her assessment completely contradicted Dr. Tausk. She did not examine Austin personally, but she based her assessment on his medical records. She reported that Austin could stoop occasionally and that there were no restrictions on his abilities to reach, handle, or finger.

In addition to offering medical reports to support his claim, Austin also testified before the ALJ in August 1996 and reported difficulty stooping and numbness in his extremities. He said that he climbs steps to get to his second-story apartment and occasionally feels like his legs are going to "just stop working." When asked about any trouble cleaning his house, he responded, "Just, it, the stooping and stuff, it, after a while it, it gets to me. I mean if I, if I take my time, if I've got all day, I can clean up." He also testified that he has numbness in his legs, arms, and hands, especially his right leg and hand, and the numbness does not subside with pain medication. He said he had muscle spasms in his arms and legs a couple times, and he can grasp or hold onto things, but not like he used to.

The ALJ concluded that despite Austin's back problems and complaints of numbness, muscle weakness and muscle spasms, Austin could perform the full range of sedentary work. Regarding Austin's ability to use his hands and arms, the ALJ discredited Austin's complaints of "numbness and diminished use of his right upper extremity" because "clinical findings [were] constantly negative for radiculopathy or other nerve root irritation." He said Austin's problem with his right arm appears to be caused by Dequervain's tenosynovitis, an impairment that "does not preclude the claimant from using his right arm for limited lifting and other motions." Regarding Austin's ability to stoop, the ALJ discredited Dr. Tausk's opinion that Austin should never stoop because it was "inconsistent with the objective medical evidence and findings reached by the claimant's treating neurosurgeons" and "his

conclusions appear to be based on the claimant's subjective allegations."

At step five of the analysis for evaluating disability claims, the ALJ must determine whether the claimant's residual functional capacity enables him to perform jobs in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir.2001). If a claimant has no nonexertional limitations, that is, if he can perform the full range of work in his exertional level, the ALJ can rely on the Grid to determine whether sufficient jobs exist. 20 C.F.R. § 404.1569; 20 C.F.R. § 404.1569a(b); *Luna v. Shalala*, 22 F.3d 687, 691–92 (7th Cir.1994). If, however, the claimant has nonexertional limitations, which reduce the number of jobs that he can perform in his exertional level, the ALJ must pose a hypothetical to a vocational expert (VE) incorporating all of the claimant's limitations, and the VE will then testify whether appropriate jobs exist. *Zurawski*, 245 F.3d at 889; *see also* SSR 96–9p; *Luna*, 22 F.3d at 691. In this case the ALJ concluded that Austin's exertional level was sedentary and that he did not have any nonexertional limitations, so he could perform the full range of sedentary work. The ALJ then consulted the Grid, found that there were sufficient jobs available for Austin, and found him not disabled.

The full range of sedentary work is described briefly in the Federal Register, 20 C.F.R. 404.1567(a), and in more detail in Social Security Ruling 96–9p. The ruling discusses stooping requirements inherent to the full range of sedentary work:

> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by

itself, only minimally erode the unskilled occupational base of sedentary work.

SSR 96–9p. Basically, a person must be able to stoop occasionally in order to perform all sedentary work. Any further limitation on a person's ability to stoop is a nonexertional limitation that reduces the range of sedentary jobs a person can perform. Social Security Ruling 96–9p also discusses manipulation tasks required for sedentary jobs:

> Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers; e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.... When the limitation is less significant, especially if the limitation is in the non-dominant hand, it may be useful to consult a vocational resource.

SSR 96–9p. So, a person must be able to perform repetitive fine movements and work with small objects in order to be able to perform all sedentary work. By concluding that Austin could perform the full range of sedentary work, the ALJ determined that Austin had the functional capacity to perform these tasks.

Austin argues that the ALJ reached an incorrect assessment of his functional capacity because he improperly discredited Dr. Tausk's opinion that he could not stoop. The ALJ considered and explicitly discredited Dr. Tausk's report because he thought it was based on Austin's subjective complaints and it conflicted with the medical evidence and findings of Austin's treating neurosurgeons—a permissible reason

to reject the opinion of a non-treating physician. *See* 20 C.F.R. § 404.1527(d)(2); *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir.2000) (controlling weight given to treating physician if opinion well supported by medical evidence and not inconsistent with other substantial evidence). Austin says that the ALJ was wrong when he said that Dr. Tausk's report conflicted with the reports of his treating physicians because there was evidence from one of his treating neurosurgeons to support Dr. Tausk's assessment. Specifically, Austin points out that Dr. Ferguson reported that Austin had below normal flexion and extension abilities in his cervical and lumbosacral spine, findings that this court has said may demonstrate a decreased ability to stoop. *See Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir.2003).

But this is not enough to show that the ALJ's credibility determination was "patently wrong," which Austin must show in order for this court to conclude the ALJ erred in rejecting Dr. Tausk's opinion. *See Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir.2000). While Austin has pointed to some evidence from a treating physician that might support Dr. Tausk's opinion, that evidence is weak at best. Dr. Ferguson never explained the significance of the flexion and extension ratings himself, and Austin has not explained or even contended that the range of motion ratings cited by Dr. Ferguson show that he has cannot stoop occasionally. Furthermore, while the ALJ might have missed one detail (the flexion and extension ratings) in a treating physician's report that might provide extra support for Dr. Tausk's assessment of Austin's limitations, the ALJ's rejection of Dr. Tausk's report was still supported by sound reasoning. With the exception of Dr. Ferguson's vague report about flexion and extension, no treating physician ever suggested that Austin could not stoop. Also, the ALJ based his rejection of Dr. Tausk's opinion on the fact that he thought it was based more on Austin's subjective complaints than on objective medical evidence. Austin has not established that the ALJ's rejection of Dr. Tausk's report was patently wrong.

■ Austin also argues that the ALJ improperly rejected his testimony about numbness and weakness in his extremities. The ALJ rejected these complaints because clinical findings were "consistently negative for radiculopathy or other nerve root irritation," medical evidence that the ALJ thought should accompany Austin's subjective complaints. The ALJ went on to say that Austin's problems appear to be caused by Dequervain's tenosynovitis, a condition that "does not preclude the claimant from using his right arm for limited lifting and other motions."

Austin contends that the ALJ's explanation for rejecting his testimony is inadequate because it does not comply with Social Security Ruling 96–7p, which generally requires ALJs to give specific reasons for their credibility determinations beyond simply saying that the claimant's allegations are not credible. Austin does not point to any specific way that the ALJ has failed to comply with 96–7p, but rather makes general assertions that the credibility ruling is inadequate and too conclusory. This court has interpreted Ruling 96–7p to require the ALJ to state the degree to which a claimant's complaints are consistent with medical evidence. *See Golembiewski,* 322 F.3d at 915. The ALJ cannot comply with Ruling 96–7p by vaguely referring to gaps in the evidentiary record, but rather must point specifically to how the medical evidence informs the credibility determination. *See Zurawski,* 245 F.3d at 887. The ALJ pointed to specific medical evidence that he found lacking in the record; he noted no evidence of a radiculopathy or other nerve root irritation to back up Austin's complaints. The ALJ justifi-

ably based his credibility finding on the lack of this medical evidence. And on appeal Austin has neither pointed to any evidence of radiculopathy or nerve root irritation in the record nor explained why the ALJ was misguided in expecting that such medical findings should accompany Austin's complaints.

Because there is substantial evidence to support the ALJ's conclusion that Austin could stoop occasionally, manipulate objects, and otherwise perform the full range of sedentary work, we AFFIRM the judgment of the district court.