NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued March 4, 2009
Decided April 1, 2009

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 08-2940

| | |
|---|---|
| SHARON RAMEY, | Appeal from the United States District Court |
| *Plaintiff-Appellant* | for the Southern District of Indiana, New Albany Division. |
| *v.* | |
| | No. 4:07-cv-0074-SEB-WGH |
| MICHAEL J. ASTRUE, | |
| *Defendant-Appellee.* | Sarah Evans Barker, *Judge.* |

**ORDER**

Sharon Ramey claimed that chronic pain prevented her from working and applied for disability insurance benefits, but the ALJ disbelieved her account of the severity of her pain. On appeal Ramey challenges the ALJ's adverse credibility determination. Because that determination was flawed, we vacate the judgment of the district court and remand this case for further proceedings.

**Background**

Ramey has suffered from severe lower back, leg, and groin pain since 2000. At that time, her family physician, Dr. John Schuck, diagnosed her with back strain and sciatica and

prescribed Vioxx, Flexiril, and OxyContin.  Her symptoms only intensified: in 2001 she began experiencing "extreme pain" and numbness down both her legs, continued to suffer back pain, and the pain and numbness prevented her from completing a full day of work at her grocery-store job.  An MRI of her lower back revealed early degenerative joint disease, and physical therapy and medication had limited effect.  Ramey also complained of extremely painful menstruation and severe pelvic and groin pain; her gynecologist discovered an ovarian cyst and performed a total hysterectomy, but complications ensued.

Ramey's gynecologist and Dr. Schuck each noted that Ramey appeared to have a low pain threshold and a high tolerance for pain medication and surmised that this was an effect of prolonged exposure to narcotic painkillers and a prior addiction to Valium.  As a consequence, drugs such as Vicodin and OxyContin were unable to control what, in the gynecologist's view, would otherwise have been mere discomfort.  When, in 2002, Ramey complained of agonizing pain even after her surgical wounds healed, the gynecologist referred her to a pain specialist, Dr. John Pelliccia.

Dr. Pelliccia observed that Ramey's pain, which emanated from her groin and radiated down her legs , was nearly constant and worsened as the day went on.  He diagnosed her with meralgia paresthetica (burning pain or numbness in the thigh, caused by injury to a nerve, *Stedman's Medical Dictionary* 1186 (28th ed. 2006)) and piriformis syndrome (aching, pain, tingling, or numbness extending along the sciatic nerve, *Merck Manual* 2635 (18th ed. 2006)).  Dr. Pelliccia ordered two rounds of nerve-block injections, but discontinued them when relief proved fleeting.  He next recommended a spinal cord stimulator, which was surgically inserted in January 2003.  Although the stimulator was initially helpful, problems soon developed, and it had to be removed in June 2004.  For the next two years (until the 2006 hearing), Ramey consistently complained to her pain specialists of pain that she ranked as 8, 9, or 10 on a 10-point scale.  At the hearing Ramey also testified that her many prescription medications made her drowsy and upset her stomach and that the pain and medication side effects forced her to spend seven otherwise-waking hours every day lying down.

The ALJ asked a vocational expert to discuss the employment opportunities available to a hypothetical person of Ramey's age, education, and experience, assuming the following limitations: she could lift ten pounds occasionally and only five pounds frequently; she needed to alternate sitting and standing every hour, stretching for two or three minutes per hour; she could stand for only two hours total in an eight hour day and could occasionally stoop; and she must avoid hazardous machinery or unprotected heights.  The VE concluded that such a person could fill nearly 800 jobs in the area, and more than 140,000 nationally.  The VE added that if, on the other hand, such a person experienced

constant excruciating pain and needed to lie down most of the day, there would be no jobs that she could fill.

The ALJ performed the requisite five-step analysis, *see* 20 C.F.R. §§ 404.1520, 416.920, concluding that Ramey was not disabled because appropriate jobs remained. The ALJ found that Ramey had not engaged in gainful work activity since her alleged onset date (step one); that she had a severe combination of impairments: low back pain with radiculopathy (a disorder of the spinal nerve roots, *Stedman's Medical Dictionary* 1622 (28th ed. 2006)), residual pain from implantation of her spinal cord stimulator, groin pain, valium addiction with withdrawal symptoms, and side effects from her pain and anxiety medications (step two); that, though severe, these impairments did not match any listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (step three); that while Ramey suffered from impairments and could not do her past work, her complaints of disabling pain were not credible, and she had sufficient residual functional capacity to do a job involving light lifting and some sitting and standing (step four); and that a person with those limitations could still work (step five).

The Appeals Council denied review, and the district court affirmed the Commissioner's ruling.

**Analysis**

On appeal Ramey principally argues that the ALJ's step-four credibility determination displays serious logical flaws. In particular, she contends that the ALJ took no account of important corroborating evidence and overstated her daily activities.

We review an ALJ's credibility determination deferentially, overturning it only if it is clearly incorrect. *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). Even so, if the credibility determination rests not on the claimant's demeanor, but on serious errors in reasoning, remand is appropriate. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004).

Ramey first argues that the ALJ improperly looked only to the limited objective medical evidence of her pain (such as test results and physical exams) and ignored other relevant evidence. The ALJ relied, she says, on the inability of her examining physicians to diagnose a physical condition that could likely produce symptoms as severe as hers. She insists, however, that her many treatments (including powerful medication and a spinal cord stimulator), as well as alternative explanations for the severity of her pain (such as her reduced pain threshold), sufficiently corroborated her account.

Claims of severe pain can be credible even if they are unsupported by significant physical and diagnostic examination results. *See Carradine*, 360 F.3d at 755. The ALJ must therefore examine the record for other corroborating evidence. *See* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p. As the Eighth Circuit observed, claims of disabling pain can be corroborated by repeated diagnoses of severe pain, alternative explanations for the intensity of the pain, and the claimant's willingness to undergo (and physicians' willingness to order) invasive and burdensome treatment:

> While it is true that physicians have been unable to identify a specific physical cause for the amount of pain claimed by [claimant], she has been repeatedly diagnosed with chronic low back pain and depression which cause her to feel exaggerated levels of pain. Depression, diagnosed by a medical professional, is objective medical evidence of pain to the same extent as an X-ray film. Another objective medical fact supporting [claimant's] subjective complaints of pain is the consistent diagnosis of chronic lower back pain, coupled with a long history of pain management and drug therapy, including the implementation of the intrathecal morphine pump. It is obvious that physicians have determined [claimant] was experiencing great pain.

*Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (citation omitted); *see Carradine*, 360 F.3d at 755 (ruling evidence that claimant submitted to heavy doses of powerful painkillers and surgical implantation of spinal cord stimulator and morphine drip "far beyond a merely self-serving, uncorroborated claim of pain by a malingerer").

The ALJ here overlooked ample evidence corroborating Ramey's claim of severe pain. First, she was repeatedly diagnosed with back pain, and a pain specialist diagnosed her with neurological conditions corresponding to some of her symptoms. Moreover, her doctors suspected that stress and her prior exposure to powerful pain medications had lowered her pain threshold. As a result, the intensity of her symptoms was often disproportionate to the objective medical evidence, and so she experienced severe pain when others might experience only discomfort. Although the ALJ touched on Ramey's low pain threshold, he nowhere contemplated its significance to her credibility. Second, Ramey underwent aggressive and invasive treatment to treat her pain: she regularly took narcotic painkillers that, she testified, made her drowsy, miserably constipated, and nauseated, sometimes weakening her for days; she had a spinal stimulator inserted into her back; and her physicians were considering implanting a morphine drip to help her manage her pain. The ALJ never acknowledged that Ramey tried a spinal cord stimulator and, though he conceded that Ramey needed narcotics and tranquilizers for her pain, he never discussed the drugs' substantial side effects. The ALJ's failure to adequately consider corroborating evidence was a serious error. *See Carradine*, 360 F.3d at 755.

Ramey also takes issue with the ALJ's view that her daily activities diminished the credibility of her claim. The ALJ believed that Ramey's professed symptoms, if genuine, would not allow her to do even basic housework and other activities:

> The claimant's allegation of 9/10 pain and sleeping most of the day is also inconsistent with the claimant's report that she can vacuum, do laundry every 4 days, and grocery shop with her husband every 2 weeks. She can also sweep with a push broom and goes to church once per week. It is especially inconsistent that the claimant still drives and is able to drive alone.

Ramey contends, however, that her activities required little exertion, focus, and time, and that they are consistent with her allegations.

We agree that Ramey's activities are minimal and should not have formed a basis for the ALJ's adverse credibility determination. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). In *Clifford*, 227 F.3d at 872, we characterized as minimal the daily activities of a claimant who was able to do house chores (lasting for two hours and punctuated by rest), cook simple meals, go grocery shopping three times per month, and sometimes carry groceries from her car to her apartment; we did not believe these activities were inconsistent with her claims of disabling pain. Likewise, in *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001), we observed that washing dishes, helping children prepare for school, doing laundry, and preparing dinner were "fairly restricted" activities that did not necessarily undermine a claim of disabling pain. *See also Ford v. Astrue*, 518 F.3d 979, 983 (8th Cir. 2008) ("washing a few dishes, ironing one or two pieces of clothing, making three or four meals each week, and reading" are not inconsistent with complaints of disabling pain). Ramey's activities are, if anything, even less strenuous than those we deemed minimal in *Zurawski* and *Clifford*, and should not have been used to discredit Ramey's testimony.

Accordingly, we VACATE the district court judgment and REMAND the case so that the ALJ may address the significance of Ramey's many aggressive treatments, her low pain threshold, and her minimal daily activities.